We will hear argument this morning in case 24783, Enbridge Energy v. Nessel. Mr. Bursch. Thank you, Mr. Chief Justice, and may it please the Court. This case arises from state officials' attempt to use state court proceedings to shut down an international pipeline that supplies energy to millions in the U.S. and Canada. The question is whether federal courts retain their traditional, equitable authority to excuse the 30-day removal deadline. Under this Court's case law and statutory text, they do. To begin, Section 1446B is a non-jurisdictional filing rule, a timing rule, that satisfies this Court's test in Young because it prescribes a period within which certain rights may be enforced. So under Holland, the Court's presumption, it presumes that federal courts retain their traditional, equitable authority absent the clearest command. Next, the Michigan Attorney General cannot rebut that presumption. Like Beckler, 1446B does not expressly prohibit equitable tolling, and its short 30-day time limit is directed at the defendant, not the Court, which is why it's placed in a procedural section. As in State Farm, Congress's decision to expressly direct a remand for lack of jurisdiction but not for procedural defects suggests that courts retain their traditional, equitable authority to excuse procedural defects. And other equitable exceptions, like waiver and estoppel, apply to 1446B. It would be incongruous not to allow equitable tolling, too. Finally, the Attorney General points to so-called exceptions to the 30-day timing rule. None rebut the presumption. Some simply define when the 30 days begins. Others were adopted years apart to govern discrete categories of litigants or subject matter. None provide what Holland demands, the clearest command that courts are precluded from exercising their traditional, equitable authority. In sum, there's no need to break new ground here. We ask that you apply the Court's well-settled precedents and reverse. I welcome the Court's questions. You removed the case against the Governor to federal court. We did. Why wasn't this removed? They're basically the same case. Well, it was a similar case, but what really changed the ground was that the Canadian government invoked the 1977 Transit Treaty while the Governor's case was up on appeal. I'm sorry, was up on removal. And at that point, that's when the Federal Common Law of Foreign Affairs suddenly burst into force. And it would have made sense for us to remove at that time. However, the state court had already stayed all of its proceedings. Everybody, the Attorney General and Enbridge, assumed that the proceedings would be going forward with the dual federal cases, the original case that Enbridge filed and the Governor's removed case. Once the Governor dismissed her case and the Attorney General announced that she was going to go back to the state court, we filed our notice of removal within 15 days. But it seems to me that if they were going to be paired in that way, you would have removed them in pairs because that suggests that they were very much similar. There were similarities, but the Canadian government invoking the treaty really changed what the state court case looked like. I don't think it was clear to anyone that there was necessarily federal jurisdiction at the outset of the state court case that the Attorney General filed. But by the time that the Governor invoked, I'm sorry, that the Governor terminated the easement and then Canada invoked the treaty, that really changed the lay of the land. Ultimately, however, the court doesn't need to get into any of that. You can do what you did in Beckler, where the law firm clearly dropped the ball in the court's words, simply decided that equitable tolling applied and then remanded it to the lower courts. So have we applied the presumption in a removal case before? This will be the first time. And I'm glad you brought that up, Justice Thomas, because I think that's one of the linchpins of this case. And I rely on three unanimous decisions of this court why you should apply it here. First in Lozano, the court unanimously announced that the statute of limitations concept is a functional one. It's not a strict one. So you don't need to have a claim being cut off. Second, a great example of that is Young, also a unanimous decision. And there the IRS's three-year look-back period was a statute of limitations because it prescribed a period within which certain rights may be enforced. And that was true even though the statute did not eliminate the IRS's claim, only some of the IRS's mechanisms for enforcement, just like removal. And then finally, the unanimous opinion in Nutraceutical, where again, the plaintiff lost their right to an interlocutory appeal of the denial of class certification, but they did not lose their claim. And they could always bring up that class certification issue later after final judgment. And yet the court looked for clear intent to preclude tolling. Well, there's a different interest involved here. We've obviously had a tendency, for example, in filings recently to put more of a focus on the interests of the plaintiffs and less on the interests of the defendant. But here it's a State, right, that would be suffering to the extent the complaint is allowed to go forward. And isn't the fact that we're dealing with a sovereign in this case cause the, perhaps the weighing to go in a different direction? Thank you, Mr. Chief Justice. To begin, it's not suffering for a State to have to litigate in Federal court. But I think what your question goes to, what your question goes to. We'll hear about that shortly. What your question goes to is the other side's contention that because of the State Federal dynamic, this Federalism dynamic, that perhaps the removal statute should be strictly construed. And I have three responses to that. First, as the Chamber brief explains at pages 20 to 21, in Dart and Brewer, this Court made clear that it doesn't provide any kind of a strict construction in this context. Second, to the extent that you have, it's only for jurisdiction, not for procedural matters. And the third thing is that even if you would construe 1446B strictly, they still can't overcome the presumption. And we have this long history of courts having traditional equitable authority. And what we don't want is to assume that Congress wanted to handcuff Federal courts so that they couldn't exercise equity. You need a clear command or some other really compelling statement to strip Federal courts of that. And that should apply equally to removal as it does in other functional statutes of limitation. I'm having a problem understanding what you're losing, what right you're losing. You call it a right to have a Federal court try the case. But I don't know that that's a right. You have a right to have recovery for a loss or a potential loss. And the forum where that right is adjudicated is not lost, not lost. You have a forum. You have the State court. None of your remedies, like in some of our other cases, would be lost forever. None of your claims or defenses would be lost forever. Canada can file whatever it filed in the Federal action in the State action. I've always thought of a statute of limitations as something where you're losing a part of your recovery, a part of your claim. But this is no loss of claim. Well, Justice Sotomayor, that's why Lozano makes clear that this is a functional test and why you crossed that Rubicon of having to lose a claim. But tell me what the function is, meaning in Lozano, the question was did the parent and we said no, that even though the parent didn't get automatic return of the child, it still got circumstances in which the child wouldn't be returned. If it's nonfunctional, I still don't understand what right to your claim you have lost. Right. That's why I point you to Young and also your opinion in Nutraceutical. Because in those cases too, no one lost a claim. In Nutraceutical, there was no right to interlocutory appeal other than that granted by rule. And yet the court looked for a clear intent to preclude tolling. That's a right to have someone hear the case. So you're losing that, all right. But here there is a court, whether it's the State court or the Federal court, there is a forum for your claim. Yes. But in Nutraceutical, you still had the ability to have an appeal at the end of final judgment. You were just losing a mechanism to enforce your arguments in the same way that we're losing our right to removal. And it was the same thing with the IRS in Young. They didn't lose their ability to go after the person who failed to pay taxes. They simply lost the mechanisms of being able to invoke non-dischargeability and priority. But they could overcome those by, for example, alleging fraud as a way to get around dischargeability. Or maybe the priority wouldn't have affected them actually being able to recover. So this court in both of those cases was very generous, really capacious in recognizing lower courts' equitable authority. And I think that's why most recently in Haro, the 2024 case, which also involved appeals, the court said the presumption applies to non-jurisdictional timing rules. And this case fits exactly within that. So are you saying that this particular deadline is functionally a statute of limitations? Or are you saying it doesn't matter whether it's functionally a statute of limitations for the purpose of our analysis? I'm saying under Lozano, Young, Nutraceutical, and Haro, it's functionally a statute of limitations. The way the court has defined that phrase for purposes of these inquiries about traditional equitable authority. What do you do with Arellano? Which is a more recent, I think, or one of the most recent cases that we have that talk about this doctrine and comes out the other way. Justice Jackson, I'm delighted that you brought up Arellano. Thank you. Good. You start with the fact that there were 16 reticulated exceptions there, some of which included equitable tolling type language. But here's the important thing about Arellano. It was the text. It said, unless specifically provided otherwise in this chapter. That is the clearest command that Holland requires. And what the court said was that that was a textual hook, quote, indicating that Congress enumerated an exhaustive list of exceptions with each confined to its specific terms. We don't have anything like that in the removal statute, anything like that in the IRS statute. I understand, but isn't that a sort of a little bit later in the analysis? I mean, I started you with the question of, is this functionally a statute of limitations? Because I'm just trying to get that pinned down. Yes. I think in Arellano, it may have functioned as that. But then we looked at the statute and we said, you know, the way this Congress has set this up, we understand it not to want any additional equitable consideration. So we're not going to consider it. I think I'm sort of at the first step with you, which is, is what is happening here in light of what Justice Sotomayor and others have said really like a statute of limitations? You're not losing the rights in the same way. It seems like we're just shifting forums here. So on the very kind of threshold consideration, does this function as a statute of limitations? I'm struggling to see why it does. So in Arellano, I don't think the court decided that question. Oh, okay. Whether that was a statute of limitations. It just assumed that the presumption applied, and then it found that clear command that I just quoted to you. All right. So why should we assume that the presumption applies here? Because the functional test that Young adopts and that Lozano then recognizes is that a statute of limitations for purposes of this inquiry, whether a presumption of traditional equitable authority applies, is whether the statute prescribes a period within which certain rights may be enforced. And so in Young, you didn't lose a claim. You simply lost some process enforcement rights, non-dischargeability and priority. In Nutraceutical, you didn't lose any rights, you didn't lose your, I'm sorry, you didn't lose any claim. You simply lost the right to an interlocutory appeal. All right. So let's move to the Arellano test. If we assume, as Arellano did, that this functions as a statute of limitations, why should we look at this statute and believe that Congress wanted other equitable tolling considerations to work here? Well, the baseline is that Holland says you need the clearest command to rebut the presumption. So now, burden of proof shifts to the Attorney General. And incidentally, the Sixth Circuit did apply the presumption below, and so they're actually the appellant on that as well. And so you look at the statute, and I start with our affirmative case, which is Beckler. Just like 14, I'm sorry, just like the statute in Beckler, 1446B does not expressly prohibit equitable tolling. It's got the short 30-day time deadline, and it's directed at the defendant, not at the court. It speaks to removal procedures, not the court's authority. And then you have this curious thing where in 1447C, you have to remand if there is a lack of jurisdiction. But the statute doesn't say that you have to remand for a lack of procedural defects. So, for example, it's not uncommon that someone who doesn't remove very often may get their notice of removal in within 30 days, but they'll forget to attach a copy of all the State court pleadings, which 1446 also requires. Isn't the broader point that because there were these kinds of exceptions in the statute, Congress was thinking about this, they covered it, and who are we now to believe that other things should be taken into account on this equitable basis? But we start with the ground rule assumption that the court maintains its equitable authority. And so when we look at the exceptions, now we have to ask whether Congress was clearly commanding. Like, did Congress intend to handcuff federal court? But you don't see that as starting with the answer in this case. I mean, you sort of — you say the ground rule is that you retain the equitable authority, but the issue here is whether — Has it been clearly rebutted? I see. Do we have the clearest command? I see. Okay. And so if we start walking down what they call the exceptions, you know, 1446b2b, 1446b3, those are just telling you when the 30 days accrues. If you have multiple defendants, it doesn't accrue until each defendant is served. If you've got a complaint that's not initially removable, it accrues when it becomes removable, as in this case with the treaty. Then you start looking at the things that they point to elsewhere. It's notable that in the red brief, they only spend one page on how the text provides the clearest command, and all the rest of it are exceptions that are elsewhere. And the problem with those is that those involve distinct litigants and distinct subject matter. They don't provide that clearest command. And I would add that those exceptions that they point to, some of them make relief even broader than what equity would provide. So for example, pursuits against members of the armed forces, this is 1442 small a, you can allow removal at any time. That's not an equitable exception. That's just completely blowing up the 30-day removal period. In 1441 sub e, the multi-party, multi-forum jurisdiction provision, it's at a later time with leave of court. And so Congress created some incredibly non-equitable capacious exceptions in these other sections. None of those suggest that Congress meant to handcuff courts and their traditional equitable authority. Mr. Bursch, can I ask you this? I understand that you and your amici allege that the state engaged in some procedural moves at a certain point that were inequitable. But was the attorney general's suit removable when it was filed? And for the 30 days following the filing of the suit? That's a very difficult question that the parties had trouble answering from the outset and probably continue to have trouble answering today. That's the kind of thing that we would encourage the Sixth Circuit to decide on remand, as he did in Beckler and also in Haro, you know, sending back that hard question. All we're asking you to do is to declare that the presumption applies, that it hasn't been rebutted by the clearest command, and to reverse. I mean, it could be an opinion that's 160 pages less than the tariff's opinion last week. Well, if, well, that's certainly a goal to aim for. I felt very left out in the tariff's opinion. Justice Sotomayor didn't write, and I didn't write opinions. But if the... Maybe we'll have a chance here. If the governor's suit was removable, on what basis would it, would we perhaps hold that the original attorney general's suit was not removable? Yeah. So, again, something you don't have to decide. But the argument we would make to the Sixth Circuit is that the district court didn't abuse your discretion. Because as soon as the governor declared that the easement was terminated, and then filed a lawsuit that asked for an immediate shutdown of the pipeline. I mean, keeping in mind, this means depriving millions of people of fuel and propane in Michigan and Ohio and Canada. That everything shifted to that lawsuit and the affirmative lawsuit that we filed. And so the parties quickly agreed with the State trial court that the State trial court proceeding would just be stayed. And so that kind of sat on the shelf while the two Federal claims went forward. Well, I understand that. But what was the relief sought in the attorney general's suit? It was an injunction. Wasn't it against continuing operation of the pipeline? It could have been. But there were also a lot of other, there were State law claims in there. They didn't specifically invoke any Federal questions. And there were lots of relief that could have been granted that would have stopped short of an injunction. So it wasn't clear to anyone that that was the type of case that the Federal courts would have taken jurisdiction of in the first instance. And so what the district court relies on, you know, this will be the abuse of discretion review that the Sixth Circuit would eventually give to this. You know, it's really five things. She says that the dispute is best heard in Federal forum when you're involving literally, you know, the ability to cook and provide heat to millions of people. Second, that there was the gamesmanship that the AG engaged in. Third, you have this race to judgment between the State and Federal courts, which Federal courts don't want. You've got the national and international implications of now the treaty, you know, which has now come into force by the time she rules on the Governor's removal action. And then finally, unusually in this case, the State court hadn't done anything. Here we are seven years later and the State court has not issued any merit rulings, not any discovery rulings. You know, so if the concern is that somehow maintaining the Federal court's traditional equitable authority is going to open the barn door, that's not going to happen. This is kind of a unicorn case. And that's why you can see in the Eleventh and Fifth Circuit, which have had this rule for more than 40 years and more than 35 years respectively, you're not seeing a flood of people coming in and succeeding on equitable tolling or equitable arguments. Can I ask about that, Mr. Birch? Yes. So how would that be policed effectively at the appellate level? I mean, if it's all going to be done, equitable tolling at the beginning by a district court judge, probably not going to certify that, not going to be ever really an opportunity to have appellate review in a way that would create rules and uniformity. Well, to start, there really hasn't been a need to do that because if you look at the district court decisions in the Fifth and the Eleventh Circuits after the rule was established, in the Mine Run case, they're just simply denied because the court doesn't think that equitable factors have been satisfied. Now, let's say over time you start to see a few more of those being granted. There will be examples like this case where something is certified for appeal and if it's necessary, the circuits or this court can lay down standards. But one of the lessons of Holland is that when it comes to equity, we trust our district courts. We allow them to consider all equitable factors, things like the importance of the lawsuit to the federal government and to the Canadian government, things like gamesmanship, whatever that is. And so at least at the get-go, there's no need to put hard and fast rules on district courts that know how to apply equity. Thank you, Counsel. Thank you. Ms. Sherman? I'm sorry. Oh, I'm sorry. Well, okay. Do you have any further? Do you have a question? Yes. Yeah, I'm sorry. Why don't you get back there? I'm just jumping the gun. And I'm glad that the Chief will exercise his traditional equitable authority to allow you to ask this important question. Justice Thomas? Justice Alito? Justice Sotomayor? Isn't fraud an equitable ground for tolling? It can be, yes. Yes. And for causes, can also be equitable ground for tolling? What was the word?  Causes. Oh, sure. Yeah. Okay. So why did Congress bother writing those exceptions into the statute? They wrote those into other portions of the statute.  1346. Oh, yes. I'm sorry. Yes. In 1446C. The diversity one is under 1446C. But even why bother writing a separate one? Well, sometimes what Congress will do is it will have a belt and suspenders approach where even if equitable principles apply, they want to make sure that they will be applied in specific circumstances. And there was a circuit split. So you're saying these are just redundancies. Well, there was a circuit split. What do I do with the fact that 1455, just two provisions after the last or one provision after 1554 on the intellectual property claims, Congress actually used the words equitable tolling and said in the criminal context, you apply equitable tolling. So it knew how to use those terms. Why didn't it use it here? Right. So in the criminal context where they said that you could, for good cause, excuse the deadline, I have two points on that. First, generally, it's harder to remove a criminal case from state court to federal court. And so Congress may have wanted a more capacious statutory standard to make clear that federal courts had that authority. But the main point I want to make.  It makes no sense to me. If it's capacious, why not just leave it alone in 1446? Why not apply it there? Well, the main point that I want to make is that when Congress adopted the good cause standard for criminal things and didn't do it for the rest of it, there are two inferences you could draw from that. One would be Congress didn't want equity. The other one would be that Congress assumed that equitable exceptions applied and it didn't need to amend 1446 to do the same thing that it was doing in 1455. And when you have competing inferences. But it needed to add fraud as an exception to removal within 30 days and needed to add it with respect to intellectual property? Yeah, so just let me finish my answer and then walk through each one of those. So when you have these competing inferences, what did Congress mean? Did it intend to exclude equity or intend to include equity? Competing inferences are not the clearest command to cut off court's traditional equity. No, but I find 1455. So that's there. So with respect to intellectual property, Congress was setting aside a separate area of subject matter jurisdiction and giving it separate rules. I mean, that's why in all of these elsewhere things, we're talking about pure structure now, not text. Congress cross-references 1446B to make it clear that it doesn't apply, that you've got literally different sets of rules depending on subject matter and party. So as for the fraud exception, there was a split among the lower federal courts about whether fraud was an equitable reason that courts could grant tolling. And so Congress resolved that split. And what it did is it made the fraud exception. And then on top of that, it made the one-year limit. But none of that provides the clearest command that Congress intended to handcuff, again, restrain federal courts from exercising their traditional equitable authority in all other cases. That was simply solving a lower court problem, Justice Sotomayor. Thank you. Justice Kagan? I mean, I suppose the question, Mr. Bursch, is whether these provisions taken as a whole don't do the same thing effectively as the Arellano provisions do. And obviously, they're not to that extent. There are not very many statutes with, like, 16 different exceptions. So it's a little bit harder than Arellano. But whether the same principle basically applies, that there is enough reference to equitable consideration in different parts of the statute, that it suggests that Congress did not have in mind the thought that equity would underlie the whole thing. So, Justice Kagan, in Arellano, all 16 of those exceptions applied to the same class of litigants. It wasn't like in 1446 where you have one rule, and then you have a separate rule for criminal defendants and a separate rule for members of the military. So on its face, that's one difference. But the crux of the Court's holding, again, is that textual hook that we talked about, unless specifically provided otherwise in this chapter. And there are a lot of things Congress could have put in 1446 to make clear that they were excluding equitable authority. They could have used that language. They could have said, you have to remove within 30 days without exception. It could have said, this is the list of exceptions, and there are no others. It could have said in 1447C, we remand if there's a lack of jurisdiction or if you fail to remove within 30 days. Congress had a panoply of options to give the clearest command, and it didn't do that. And when that happens, we assume that Congress means to trust courts. And when we think about this traditional equitable authority, this isn't something that just developed in Irwin or the Court's tolling cases. This goes all the way back to before the statute was even passed. You know, this Court's Porter decision from 1946 says, unless a statute restricts the Court's equitable authority with a clear command, then equitable principles apply with full force. That was three years before 1446B was passed. Congress trusts courts to get equity right, and this Court can trust district courts to get equity right. Justice Gorsuch? Why do you want to be in federal court? That's a great question. We have four reasons, two generally speaking and two specific to this case. The two general, the first is I can't do better than Paul Clement last month quoting Daniel Webster in response to a similar question, there's value in having your case litigated in a forum that respects the federal authority. We agree with that. In addition, this case here is important because federal courts are uniquely qualified to decide federal common law of foreign affairs issues. That's just not something state courts deal with very often. The two specific reasons that we have is that typically there are no interlocutory appeals from the state courts to this court, except for, you know, very narrow exceptions. And if the Michigan Supreme Court were to uphold a preliminary injunction, a non-final order, that shut down the pipeline, you know, took away half of the fuel for the Detroit airport, resulted in no propane for heating for the entire upper peninsula of Michigan and two-thirds of the residents in the lower peninsula. Those are the types of things that we would want a federal court to be able to weigh in, and we wouldn't be able to do that at an interlocutory stage. And then finally, because Enbridge has its own affirmative lawsuit against the governor in federal court, and it's acknowledged to have subject matter jurisdiction, as Judge Neff talked about in her orders, that creates this race to judgment instead of a single consolidated action. And that's one of the reasons why she did not abuse her discretion when she allowed the Attorney General's case to be removed. Are you concerned that you would not get a fair shake in state court? I'm not impugning... And if so, what's the basis for that? Yeah, I'm not impugning the state courts at all. But I'm guessing that the Michigan state courts have not dealt very often with the federal common law of foreign affairs jurisdiction. That's something that's uniquely situated to the federal system. And then, you know, again, you have this race to judgment problem. It doesn't come up that often in regular federal district court litigation either. Certainly it does more often than state court litigation. I'm guessing that from time to time, at least, federal courts deal with issues involving the United States and foreign sovereigns. And that's one of the really unique things about this case, which makes the exercise of equity especially crucial, as the district court recognized. Thank you. Justice Jackson. I'm sorry, Justice Barrett. Justice Jackson. So just to follow up on Justice Kavanaugh's question, knowing the various benefits of removal as you've articulated them, and maybe you said this earlier and I missed it, why didn't you remove at the same time as you removed the governor's case? Because it wasn't clear at the outset of the Attorney General's case. When the governor filed her... It wasn't clear that she had a case or... It wasn't clear that there was federal jurisdiction at that time. What happened when the governor filed her case, that was the first of two things that really changed the landscape. She terminated the easement. So now we're trespassers, in her mind. She's wrong about that, but that was her view. And second, she's asking for an immediate shutdown order with her lawsuit. And so at that point, everybody's attention shifts, once we remove it, away from the state court and to the federal court. We're proceeding with those things. The state court case is put on ice. And then Canada invokes its treaty. And that's what brings the federal foreign affairs, or the federal common law of foreign affairs into the case. You say put on ice. I'm sorry. Was it stayed by the... It was stayed, yes. It was stayed. All right. With the consent of both parties. No one thought anything was going to be happening in the state court until the governor loses her remand motion, the governor dismisses her lawsuit, and the Attorney General signals in a press conference or a press release that they're going to go back to the state court judge. And that's when we acted within 15 days. But we need the equity to bridge that gap between the 72 days between when Canada invoked the treaty and when we finally removed in order to keep that case in federal court. Thank you. But again, you don't need to resolve any of those issues in this case. That's all appropriate for the Sixth Circuit on remand. Thank you. Thank you, counsel. Ms. Sherman. Mr. Chief Justice, and may it please the court, having missed Congress's express mandatory 30-day removal deadline by over two years, Enbridge seeks an atextual escape hatch. This court should reject that effort for two reasons. First, the presumption of equitable tolling does not apply. The presumption is justified by a historical tradition specific to statutes of limitations, which set a deadline by which legal remedies must be pursued or are lost. The history and function of the removal deadline are different. The deadline serves not to protect defendants from stale claims, but to efficiently settle which of two courts will decide the merits of a case. This allocation of judicial power is a task for Congress, not courts, which is why the traditional practice in the removal context has always been strict enforcement, not equitable tolling. Second, even assuming the presumption applies, it is overcome here. Congress created at least six explicit exceptions to the 30-day deadline, many of which already reflect equitable concerns and some of which specifically authorize courts to extend the deadline for cause. This comprehensive scheme shows that Congress did not authorize courts to create their own exceptions. Enforcing the rules that Congress has set honors its choice to prioritize efficiency and does not have the harsh consequence of depriving defendants of their day in court. All told, Enbridge's approach disregards the statute's text, structure, and history and would inject messy, fact-bound questions into a forum selection process that Congress intended to be short and predictable. I welcome the Court's questions. What do you see as the difference between the removal time limits and the statute of limitations? There's a huge difference. This Court in Lozano talked about the functional test for statute of limitations. The removal deadline doesn't mean any aspect of that test. It's not establishing a period of time with which a claimant must bring a claim. It doesn't foster the elimination of stale claims. It doesn't provide any certainty about a plaintiff's opportunity for recovery and defendants' potential liabilities. And when we talk about statute of limitations and a presumption of statute of limitations, the reason it's important there is because we are trying to get at what Congress intended. And in the context of statute of limitations, equity is sometimes important because the result of missing a statute of limitations is that the courthouse door closes for that litigant. That is not true here. The courthouse door doesn't close. One of them might close, but there is another courthouse door open for both litigants to potentially have full recovery on claims. And so not — It's not a functional statute of limitations in this case at all. There is no — Ambridge could recover in State court just as it could recover in Federal court. And a presumption of statute of limitations doesn't do any work here because the whole tradition of equitable tolling for statute of limitations is a different tradition than the unique tradition here for the removal process. In the removal deadline, the whole removal process is a creature of statute. It is not a creature of common law. And only Congress can set limits on when a case is going to be taken from one sovereign, the State court, and removed to another sovereign, the Federal court. Do you think there are any grounds on which equity would allow a district court to excuse noncompliance with a 30-day removal deadline, other than the exceptions that are set out in the statute? Are there any equitable — are there any nonstatutory equitable exceptions to the 30-day rule? It's possible that there could be some estoppel. There cannot be equitable tolling. There — it's possible there could be estoppel, but that isn't an issue here. It's not an issue that Ambridge has raised for good reason. If estoppel is — if estoppel would permit removal after the 30-day period on equitable grounds, then that does seem to say that we have to look beyond the statutory text and see whether what is alleged here might possibly qualify. This Court has said that equitable tolling and estoppel are distinct doctrines. It said that in Begley. And this Court has typically deferred, as it did in Arellano, the question of estoppel because it — especially if it's not raised in a case that was not raised here. It hasn't been briefed before this Court. And it's hard to see that equitable estoppel would— No, I'm not suggesting that this is a case in which equitable estoppel would excuse noncompliance. I'm just asking whether you have to agree, if you recognize that equitable estoppel might excuse the late filing of removal, that equity might possibly extend further to other comparably egregious situations. I'm not suggesting that equitable estoppel would apply. I don't think it would apply to this removal statute. And the reason I say that, I just bring it up as it's not something the Court has considered. It's a separate question. I don't think it would apply here. And I say that because there is so much — there are so many equitable considerations that are already built into this statute that this Court might well decide, if estoppel was briefed and before this Court, that it didn't apply. All right. Well, thank you. Let me ask you one other question, at least for now. And that is, I would be interested in your response to the arguments that are made by some of the amici about the consequences for U.S.-Canadian relations if the State Court orders that operation of the pipeline be terminated. Those are spelled out in the West Virginia brief. They're pretty severe. And Mr. Bursch made the point that if this proceeds in State court and the State court issues a preliminary injunction against continued operation of the pipeline, it could be a long time before the issue could be — this issue involving treaty rights, which is a Federal question, could be reviewed here. So what would you — you don't really address that. So what would you say to that? When Congress wants a kind of case or a kind of issue to be decided in Federal court, it mandates exclusive jurisdiction. And otherwise, State courts have concurrent jurisdiction. They have reserve power under the Constitution to adjudicate cases in their own courts. This is a State official, State claims filed in a State court. Congress, when they set up the renewal process — So the answer is it's just too bad. And maybe that's the answer. Sometimes the law produces consequences that are not desirable. But what we're told — this is in the West Virginia brief. They're quoting a Canadian source. Shutting down Line 5 would result in a massive shortage of gas, diesel, and jet fuel in both Ontario and Quebec, not to mention in thousands of Canadian jobs. Special Committee of the Canadian Parliament concluded that Line 5 shutdown could reduce safety, create shortages of various energy products on both sides of the border, et cetera, et cetera. The State's position is that these are State law claims. None of those considerations are at play here because we trust State courts to adjudicate issues, to even Federal questions. They've been doing that since the founding. And we trust them to do that with this Court's backstop. If something goes really awry in a State court and it's an important matter of Federal treaty, it hasn't been given exclusive jurisdiction in the District Court, this Court can review that and can fix that. But we trust State courts to do their job and to have concurrent jurisdiction. And one of the reasons there has been a tradition of strict enforcement of the removal deadline here is out of respect for State courts. And this Court has said over and over in a long line of cases from Babbitt v. Clark on that when the deadline is missed, remand is necessary. And this Court has said that strict procedures, the statutory procedures for removal, are to be strictly construed. Counsel, the State court action here has been stayed for most of its existence. We now have a separate Federal action. In that case, the District Court recently granted summary judgment to Enbridge, finding that the attempt to revoke the easement was preempted by Federal law, correct? Yes. So if we affirm the Sixth Circuit, that that will result in litigation in both State and Federal court, correct? The way that stands now is that there has been an adverse judgment in a Federal District court, including rejection. If we reverse the Sixth Circuit, I misspoke. Yes. Then there would be two actions. Yes. The Governor has filed. So wouldn't it avoid waste to have these two actions proceed together in the same court? The Attorney General and the Governor has always been concerned about these two, about cases being not on the same track. The Attorney General and the Governor. Right. So assume you win here. Could you represent or are you willing to represent that on remand, you will ask the State court to continue to stay this action until the Federal action finishes? There has already been a stay. I've asked you a very different question. If you were to win here, are you willing to commit that you will ask the State court to continue its stay pending resolution of the Federal action? I haven't talked to my client to be able to confirm that, but that's certainly something that we can talk about strategically. And if the strategic is you want the State court to beat out the Federal court, shouldn't we care about that? That was Justice Alito's question. The Attorney General does care about staying in State court. She believes these are State. Yes, but it didn't act very expeditiously in State court. It would be a strategic decision. At this point, there has been a second stay in order to see what the Sixth Circuit is going to decide. One final question. You give us two grounds to reverse. The one is that this is not a statute of limitations. And the other is that even if it is, the presumption has been overcome. If you were to win, which is the easiest and most narrowest ground to win? I think the easiest for this court is to say not to deal with the statute of limitations and the presumption issue because we think that the text and the structure and the history here absolutely mean that congressional intel would say that even if there was a presumption, it would be rebutted. Is there any way, some of them are clear on how to distinguish them, but he mentioned, Mr. Birch mentioned four cases that talk about losing a procedural right to proceed. Lozano was one of them, and there were three others that he mentioned. Can you distinguish each of those cases? I think one of them was Lozano. Definitely talked about what is or isn't a statute of limitations. There was no statute of limitations there because there was the opportunity for recovery, albeit adjudicated differently. I believe another one of the cases was Young, and there the court said it was a statute of limitations. It was albeit a limited one, but the rights that were at issue in Young were priority and non-dischargeability, and those are procedural rights that were connected to a recovery and would have been lost, and the court did recognize the reason it was limited is because there were some equitable abilities to recover. Nevertheless, those very, very important rights for the United States would have been lost. How about the tax case? Beckler. Beckler was a statute of limitations. There was just one exception. Beckler was also a case that was steeped in equity. It was about the collection due process hearings for state court for a particular kind of case where the tax court was going to be levying property, and that really mattered there because that was a context that was very friendly to the lay filer. Thank you, Counsel. Haven't, though, General, we been pretty generous in terms of what we call functionally a statute of limitations? I mean, take the Beckler case that you ended on, which was just an appeals deadline. You know, I bet if you put ten lawyers in a room and said it's an appeals deadline, a statute of limitations, they would kind of stare at you funny. You know, what it is, it's a deadline. I mean, a statute of limitations is also a deadline, but we don't typically think of every deadline like an appeals deadline is a statute of limitations, but we've been willing to call it that just because it's a deadline, and if you don't meet the deadline, consequential things matter. Consequential things happen. And so, too, here. This is a deadline, and if you don't meet the deadline, consequential things happen. Now, in this case, it's the loss of a forum rather than the loss of a claim, but I guess when we're being quite as generous and quite as functional, if you will, as we have been in this area, it doesn't seem to me obvious why we shouldn't say that this isn't functionally a statute of limitations, too. It's very different because although there might be consequences and there might be a right involved, the court in Young said it had to be a substantive right, and it defines a subset of claims eligible for certain remedies. And here, when you're talking, it's all about remedy and whether you're going to lose the remedy. And the reason statute of limitations doesn't apply here is because there isn't a harsh consequence. The reason statutes of limitation apply to cases and why there's equitable tolling is because there are very harsh consequences. Somebody is going to lose out completely on their ability to bring a case. That's not true here. They're going to get one forum or another, and maybe they're not going to get their preferred forum, but they're going to get a forum to litigate their case. And that's the biggest thing that separates this from a statute of limitations. And this Court has never applied statute of limitations beyond the presumption of equitable tolling beyond statute of limitations, and I think that's one of the reasons why. And if the Court was thinking of expanding that at all, it wouldn't be here. It shouldn't be here, where there's a whole distinct tradition of strict enforcement. We cite cases on pages 50 to 51 of our briefs, starting from Babbitt v. Clark in 1880 onward, where this Court has strictly enforced the deadline, and there's a reason for that. Counsel, can I ask you about that context? Because I actually kind of hear you making a slightly different argument. And it is, yes, the Court has said that when these rules function as a statute of limitations, the presumption applies. But based on your original analysis or your original statement and what you say in the brief, I almost hear you suggesting that whether or not this functions as a statute of limitations, the presumption shouldn't apply because this is the removal context. And you say in your brief, the Federal removal statute provides a comprehensive scheme that governs the allocation of judicial power in this way, that Congress has made this decision. And that seems to me almost to be like a different or separate argument from whether or not this functions. as a statute of limitations. It's just, we've set forth a number of arguments for why this doesn't function as a statute of limitations. One of them is history and purpose. And certainly, this doesn't function as a statute of limitations because if you look at sort of there not being a historical tradition that there is for statute of limitations, the separate historical tradition here is about strict construction and respect for I don't disagree with you on the functioning of the statute. That's why I'm just, I lose the presumption point. My only point is, I wonder if you have to be right about whether or not this functions as a statute of limitations in order to make your presumption point. That if you lose on that, then we do have to presume that Congress wanted courts to retain their equitable authority, as your friend on the other side says, in this area. And so then we jump to, you know, has that been rebutted? Is there a clear command here? But I kind of hear you suggesting, and I don't know if it's right or wrong. I just want to put it out there. I kind of hear you suggesting that in the removal context, even if we look at a statute that relates to removal and we say, boy, this kind of functions like a statute of limitations, there are good reasons to believe why we shouldn't presume that, nonetheless, Congress intended for this to be an area where courts retain their equitable authority. Yeah. No. I would say the reverse is true. Okay. Tell me. Yes. If, I would say that this whole context of taking, transferring jurisdiction from one sovereign to another counsels for there not to be equitable tolling. That's what I'm saying. Yes. What I'm saying is regardless we look at this statute and we might go, oh, yes, this looks like the rights are being transferred. It looks like a statute of limitations. But does that necessarily mean that we should presume that Congress intended for equitable tolling to arise in this situation? And you're saying regardless of how it functions in this situation, we should not presume that Congress wanted courts to have equitable authority because this is a removal context. Yes. And that's like a special thing. Even if this court thought it was a statute of limitations, in this context, that would butt up against strict construction canons. I also would disagree with my friend at opposing counsel that this test is a clearest command test. There is not a clear statement test here. The test is the test that this court has articulated in Arellano. And that is we're looking at congressional intent. Is there reason to believe that Congress didn't want equitable tolling? And everything here from the text, the structure, the history, and the purpose strongly suggests that Congress would not have wanted tolling. We haven't talked a lot today about the exceptions. But when you look at the clear mandatory language, shall file in 30 days, and that's supported by a very comprehensive scheme that has at least six exceptions. And those exceptions are interrelated. The default deadline of 30 days is repeated multiple times, similar to in Brokamp. And similar to in Arellano, you have these many exceptions that are taking a situation outside of the default rule. Can I ask a question about state courts? I certainly appreciate and agree with your respect for state courts. Is there some particular reason you want to be in state court in this case? Yes, because this is a state official, state law claims, and those state law claims have to do with the primary claim in the Attorney General's case is public trust and whether the easement is violating a public trust doctrine. These are state lands and state bottom lands in the Straits of Mackinac. And those are reasons why the Attorney General wants us in state court. Congress has given the parties sort of the choice of forum, and they gave plaintiff the first choice of forum. She was the plaintiff. She chose the state forum. Congress also gives defendants the opportunity to choose a federal forum. And if this had been a case where Enbridge looked at it and said, boy, there's a lot of really important issues here, we don't think this is state law, and we ought to have this in federal court, they should have removed timely. They missed every opportunity to remove timely. Can you respond to the point that your opposing counsel made about foreign affairs issues or the foreign? You heard that. The whole foreign affairs area is not an area where Congress said federal courts have exclusive jurisdiction. So, again, we trust state courts to decide big, important federal cases. And even if this turns out to be not a case about state law claims but somehow a case about a treaty, we trust the state court to do it with this court as a backdrop. Thank you. Justice Thomas? Justice Alito? Did the Attorney General represent the Governor in the Governor's suit? The Department of Attorney General represents the Governor in the Governor's suit, which we do often. And that, you know, sometimes the Attorney General will take one position and somebody in the Department of Attorney General will represent a separate side of an issue. Why was a separate suit brought? Why didn't you simply move, if there were additional claims, why didn't you simply move to add those claims to the case that was already in state court? The second suit, the suit by the Governor, was brought 14 months after the Attorney General's suit. And although there are some overlapping issues, the biggest distinction with the Governor's suit is that it was based on a new circumstance that occurred then, which was that the Governor issued a notice and revocation of the easement over state land. And at that point, 14 months had passed. Enbridge had already litigated this case in state court for over a year. And it was a prudent decision to say, we're going to file, the Governor's going to file this in state court, assuming that it would be consolidated with the Attorney General's case. And frankly, because there were new parties, new claims. Assuming that it would be consolidated. Was it ever consolidated? No. Because Enbridge removed the Governor's case timely. So it didn't stay in state court very long. And to an earlier question, Enbridge could have removed during the 30-day period, for the same reasons that they later removed the Governor's case. They also could have removed this case when they removed the Governor's case. And they could have, whether that would have been successful or not, would have depended on whether a court thought that they could come under the B-3 exception for initial non-removability. And then they had a third potential on October 4, 2021, when Canada invoked the dispute resolution. But they didn't take any of those. And as the Sixth Circuit held in this case, they missed every opportunity. They were 850 days late. They missed every potential opportunity. And that is now law of the case because Enbridge has not sought to have this court review. That's part of the Sixth Circuit's decision. Justice Sotomayor? Justice King? Justice Gorsuch? Justice Kavanaugh? Justice Jackson? Thank you, Counsel. Thank you. Rebuttal, Mr. Bursch? Thank you, Mr. Chief Justice. First, I just want to level set the ground here again. And then I'm going to talk about some concessions that we just heard that maybe make this an opinion even shorter than the 10 pages I suggested. To level set, why do we have this presumption? Wong said it's likely to be a realistic assessment of legislative intent, as well as a practically useful rule of interpretation. Why is that? Because going all the way back to the beginning of the republic, Justice Scalia's dissent in McQuiggan says that we've recognized equitable tolling in statute of limitations periods, going all the way back to the colonial legislatures. So we don't need an atextual escape hatch. They need to explain why there is a clearest command that Congress intended to take away this court and the lower court's traditional equitable authority. And that clearest command requirement isn't just from Holland. That goes back all the way to Porter, at least in the 1943 or 46, three years before 1446B was adopted. So this isn't a new standard that suddenly started getting applied to statutes of limitations in the modern day. It's been the backdrop forever. So that's number one. So number two, how about this presumption? And here's where the first two concessions come in. Justice Alito, you are asking my friend whether estoppel would apply. All lower courts recognize that estoppel and waiver apply in this context. And this court said in Zipes, that was a unanimous Justice White opinion, that those two equitable doctrines and the doctrine of tolling travel together. And so we would expect that if someone could lose their right to remove because they did too much stuff in the trial court, in the state court, or someone could lose their right to resist removal by failing to file a timely motion to remit in the federal court, that there would also be equitable tolling. So that's a huge problem for them. And then second concession, Justice Sotomayor, when you were asking about whether the presumption would apply, is this a statute of limitations, and she was talking about Young. And she admitted that in Young, we were talking about procedural rights, not substantive rights. When you're talking about something like non-dischargeability and priority, those are simply mechanisms to get you to the final judgment. The IRS did not lose its claim to go and get back taxes. It simply had a different burden that it had to satisfy. And the same thing is true here. And so that's why, Justice Kagan, you're completely right that this seems obvious to fit within those types of statutes, because whether you're talking about dischargeability and priority mechanisms in Young, or you're talking about appeal deadlines in cases like Nutraceutical or in Beckler, this Court has not confined the application of the presumption only to those cases where you lose a cause of action. That's happened over and over and over again. The third point I want to make is about this strict construction because of the federalism. I mentioned this briefly, but the two cases that they most rely on, Syngenta and Shamrock Oil, those both strictly construed jurisdiction. And, of course, we have to strictly construe federal subject matter jurisdiction when you're talking about State courts' interests. In the first case, it was whether the All Writs Act would provide subject matter jurisdiction to remove. The Court said no. Shamrock Oil, it was whether the amount alleged in a counterclaim could count towards the diversity limit. And the Court said no. But when you're talking about mere procedural things, there is no strict construction. And there is no construction of this statute that provides that clear rebuttal of the general equitable authority that courts have. Justice Kavanaugh, you're raising exactly the practical points that we're concerned about here. Yes, they brought State court claims. But what we're talking about is an international pipeline that not only impacts the relationship between the United States and Canada, but literally millions of people within and with outside Michigan. This is the paradigm case that belongs in federal court. It was a much different kind of federal interest, but one that I think was significant in the Lofton case, which is the Eleventh Circuit decision that created the equitable tolling doctrine for removal statutes in the Eleventh Circuit 40 years ago. There, the Navy had been subjected to a garnishment final judgment in a State court that exceeded the federal statutory limit of the waiver of sovereign immunity. And when they removed late, there was no excuse for it. The Navy just blew it. And yet the Eleventh Circuit said this is the kind of case that belongs in federal court. We're talking about an invalid judgment entered against a branch of the military. So the fact that the federal government was not diligent and didn't have any obstacles to filing its removal action in time did not stop the court from exercising its equity and putting that case where it belonged, in front of federal judges. You should do that here. So finally, as to the merits of whether equity should apply here, we could go very deep into those. We could have lots of briefing on that. But the Attorney General did not raise that issue in the Sixth Circuit, as we pointed out in our brief. The Sixth Circuit did not decide it. And it's not part of the question presented. You should simply remand and allow that to be worked out. Thank you. Thank you, Counsel. The case is submitted.